# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. 25-CR-4055-LTS-KEM |
| vs. | **ORDER** |
| MANUEL NEGRETE-VACA, | |
| Defendant. | |

Defendant Manuel Negrete-Vaca moves to dismiss the indictment charging him with failing to register as a sex offender under the Sex Offender Registration and Notification Act (SORNA), 18 U.S.C. §§ 2250(a), (b). Doc. 23. Resolution of Negrete-Vaca's motion requires determining whether his prior Iowa conviction of assault with intent to commit sexual abuse constitutes a "sex offense" requiring registration. Defendant argues that to be a sex offense under SORNA, the crime must have a sexual-gratification element and that assault with intent to commit sexual abuse lacks that element. I agree and recommend **granting** the motion to dismiss.

## I. BACKGROUND

On June 23, 2020, Negrete-Vaca was convicted of assault with intent to commit sexual abuse, in violation of Iowa Code § 709.11(3), in the Iowa District Court for Sac County.[1] Doc. 23-2. The victim was an adult. *See* Doc. 23-4. The indictment in this case charges Negrete-Vaca with failing to register as a sex offender in violation of

---

[1] The Iowa District Court's Record of Plea of Guilty and Sentencing Order required Defendant to register as a sex offender with the state of Iowa pursuant to Iowa Code Chapter 692A. Doc. 23-2 at 3.

SORNA from April 1, 2022, to August 5, 2024. Doc. 17. The indictment alleges that he was required to register because of his prior Iowa conviction. *Id*.

Defendant moved to dismiss the indictment, arguing that his Iowa conviction does not require SORNA registration. Doc. 23. The Government filed a resistance (Doc. 28), and Defendant filed a reply (Doc. 29). The parties then filed supplemental briefing at my request. Docs. 30, 33, 34. The parties' arguments hinge on whether the federal SORNA statute and the Iowa assault with intent to commit sexual abuse statute both require a particular element, which is an issue of statutory interpretation and thus a legal question. Accordingly, this court can resolve the issue on a motion to dismiss.[2]

## II. DISCUSSION

Defendant Manuel Negrete-Vaca's motion to dismiss the indictment in this case requires the court to determine whether assault with intent to commit sexual abuse under Iowa law constitutes a "sex offense" requiring registration as a sex offender under SORNA. Defendant argues that to be a sex offense under SORNA, the crime must have a sexual-gratification element and that Iowa's assault with intent to commit sexual abuse lacks that element. The Government asserts that "Iowa's definition of 'sex abuse' requires a 'sex act.' SORNA registration requires an 'element involving a sex act. . . . Therefore, defendant's sex abuse contains an 'element involving a sex act,' and defendant is a 'sex offender' under SORNA." Doc. 28 at 2. However, this simplification ignores the potential for different definitions of a "sex act" under Iowa law and a "sex act" under SORNA.

---

[2] *See* **United States v. Marrowbone**, 102 F. Supp. 3d 1101, 1107 (D.S.D. 2015); **United States v. Church**, 461 F. Supp. 3d 875, 893-94 (S.D. Iowa 2020).

## A. Sexual Offense Under SORNA

SORNA requires registration by a "sex offender."[3] "Sex offender" is defined as a person "convicted of a sex offense."[4] The definition of "sex offense" includes "a criminal offense that has an *element* involving a sexual act or sexual contact with another."[5]

When a statute requires comparing a defendant's prior conviction to other offenses, "[f]ederal courts generally use one of two analytical approaches."[6] Under the categorical approach, the court ignores the defendant's actual conduct and compares the elements of a prior offense with the elements of the federal statute.[7] If the underlying offense extends more broadly, punishing more conduct than the federal definition, then the conviction does not qualify as a predicate offense.[8] Under the circumstance-specific approach, on the other hand, the court considers the "particular circumstances in which an offender committed the crime on a particular occasion."[9] Because the SORNA provision defining a sex offense as "a criminal offense that has an element involving a sexual act or sexual contact with another" requires looking at the "element[s]" of the offense, the categorical approach applies, and the court does not consider the underlying

---

[3] **34 U.S.C. § 20913(a)**.

[4] **34 U.S.C. § 20911(1)**.

[5] **34 U.S.C. § 20911(5)(A)(i)** (emphasis added). The other definitions of "sex offense" include specified federal and military offenses and certain crimes against minors and are inapplicable here. **34 U.S.C. § 20911(5)(A)(ii)-(v)**.

[6] *Church*, 461 F. Supp. 3d at 882.

[7] *Id.* (citing *Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016)).

[8] *Barker v. United States*, No. 4:16-00084-CR-RK-1, 2022 WL 1749252, at *8 (W.D. Mo. May 31, 2022); *United States v. Laney*, No. CR20-3053-LTS, 2021 WL 1821188, at *2 (N.D. Iowa May 6, 2021); *United States v. Thayer*, 40 F.4th 797, 800 (7th Cir. 2022).

[9] *United States v. Hill*, 820 F.3d 1003, 1005 (8th Cir. 2016) (quoting *Moncrieffe v. Holder*, 569 U.S. 184, 202 (2013)).

offense conduct.[10] As such, the underlying conviction will only qualify as a sex offense under SORNA if the "statute under which he was convicted covers the same conduct as – or a narrower range of conduct than – SORNA."[11] Both parties appear to agree about the application of the categorical approach to determine whether an underlying offense requires registration under SORNA.

SORNA does not define "sexual act" or "sexual contact." When a statute leaves a term undefined, the court applies its "ordinary, contemporary, common meaning."[12] Relying on dictionary definitions of the word "sexual," circuit courts have defined a "sexual act" or "sexual contact" in SORNA as acts or contacts "related to or for the purpose of sexual gratification."[13] A district court in this circuit has agreed.[14] In *Barker v. United States*, the Western District of Missouri defined sexual contact and sexual act consistent with their ordinary meaning to require a sexual gratification component, and

---

[10] *See United States v. Vineyard*, 945 F.3d 1164, 1168, 1170 (11th Cir. 2019) (collecting cases); *see also Barker*, 2022 WL 1749252, at *8 (stating that "federal courts generally agree the categorical approach applies to determine whether a particular prior conviction qualifies as a sex offense under the elements definition of SORNA" and "when faced with similar statutory definitions and comparisons, the Eighth Circuit also generally employs the categorical approach"), *aff'd,* No. 22-2375, 2023 WL 6844489 (8th Cir. Oct. 17, 2023); **United States v. Marrowbone**, No. 4:24-CR-40106-RAL, 2025 WL 1951890, at *3 (D.S.D. July 16, 2025); **United States v. Laney**, No. 20-CR-3053-LTS-KEM, 2021 WL 2373845, at *3–4 (N.D. Iowa Mar. 26, 2021), *report and recommendation adopted*, 2021 WL 1821188 (N.D. Iowa May 6, 2021).

[11] **Vineyard**, 945 F.3d at 1170.

[12] **United States v. Sonnenberg**, 556 F.3d 667, 671 (8th Cir. 2009); *see also* **United States v. Westerman**, 705 F. App'x 651, 652 (9th Cir. 2017) ("'Sexual act' and 'sexual contact' are undefined, so we use the 'ordinary, contemporary, and common meaning of the statutory words'").

[13] *See Vineyard*, 945 F.3d at 1172 (defining "sexual contact" as "a touching or meeting of body surfaces where the touching or meeting is related to or for the purpose of sexual gratification"); **United States v. Helton**, 944 F.3d 198, 207 (4th Cir. 2019), *as amended* (Dec. 4, 2019) (defining "sexual act" as "something done voluntarily that relates to sexual desire or gratification").

[14] **Barker**, 2022 WL 1749252, at *8.

that a Florida conviction for attempted sexual battery does not qualify as a sex offense under SORNA because it is not so limited.[15] The court noted that in a sentencing context "the Eighth Circuit has held the plain and ordinary meaning of the term 'sexual' necessarily includes that an 'intent in committing the [act] is to seek libidinal gratification.'"[16]

Some district courts have looked to the definition of sexual act and sexual contact in 18 U.S.C. § 2246.[17] That statute, entitled "Definitions for chapter," defines terms "[a]s used in this chapter,"[18] Chapter 109A, which sets out the federal offenses of aggravated sexual abuse, sexual abuse, sexual abuse of a minor or ward, and abusive

---

[15] *Id.* (citing *United States v. Bemis*, No. 8:19-CR-458-T-33AAS, 2020 WL 1046827 (M.D. Fla. Mar. 4, 2020)).

[16] *Id.* (citing *United States v. Garcia-Juarez*, 421 F.3d 655, 659 (8th Cir. 2005) and *Sonnenberg*, 556 F.3d at 671).

[17] *See, e.g.*, *United States v. Marrowbone*, No. 4:24-CR-40106-RAL, 2025 WL 1951890, at *6 (D.S.D. July 16, 2025). Section 2246 defines "sexual act" as follows:

> (A) contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however slight;
> (B) contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus;
> (C) the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person; or
> (D) the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person.

**18 U.S.C. § 2246(2)**. It defines "sexual contact" as "the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." **18 U.S.C. § 2246(3)**.

[18] **18 U.S.C. § 2246**.

sexual contact.[19] Because SORNA is not in Chapter 109A and importing a definition from § 2246 into SORNA conflicts with the language and structure of the statutes, circuit courts have uniformly rejected importing these definitions to SORNA.[20] Similarly, the Eighth Circuit has declined to import the Chapter 109A definitions of "sexual act" and "sexual contact" to a different chapter when analyzing a sentencing enhancement.[21] Thus, I reject the importation of a definition from Chapter 109A into SORNA.

Consistent with the Western District of Missouri, I find the Fourth and Eleventh Circuit's analysis compelling and construe "sexual act" and "sexual contact" according to their ordinary meaning, which requires a purpose of sexual gratification. The Government does not identify authority holding that SORNA does not require an element sexual gratification to constitute a sexual act or sexual contact.

---

[19] The Government does not expressly offer a definition of "sexual act" or "sexual contact" under SORNA but it does equate Iowa's law and federal definitions, stating they "substantially track" and cites 18 U.S.C. § 2246(2), (3) and Iowa Code §§ 702.17, 709.1. *See* Doc. 28 at 8.

[20] *Vineyard*, 945 F.3d at 1173 (stating that the "argument that the definition of sexual contact used in 18 U.S.C. § 2246 should be imported into SORNA conflicts with the language and structure of both statutes" and "there is no legislative relationship between SORNA and [Section] 2246"); *Helton*, 944 F.3d at 207 (finding there was "no indication that Congress intended to import the definitions of chapter 109A to [another] chapter" and noting that Section 2246 "explicitly limits the definitions provided therein to the chapter in which it resides" because the wording and title of that section limits it to that chapter ("[a]s used in this chapter" and "[d]efinitions for chapter.") (*quoting* **United States v. Fugit**, 703 F.3d 248, 255-56 (4th Cir. 2012)); *Westerman*, 705 F. App'x at 652 ("We are not persuaded that Congress intended 'to import the elements of offenses delineated elsewhere in the U.S. Code,' and therefore decline to import the definitions of 'sexual act' and 'sexual contact' found in 18 U.S.C. § 2246(2), (3).").

[21] *See Sonnenberg*, 556 F.3d at 670-71 (rejecting the argument that definitions of federal offenses from Chapter 109A should apply to a sentencing enhancement applicable if a prior state conviction was "under the laws of any State relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward," noting that "the statute does not instruct us to apply chapter 109A's definitions"; the court defined "sexual" for "sexual abuse" under its ordinary meaning as needing intent to seek libidinal gratification, and concluded that a prior conviction for committing lascivious act with children triggered the enhancement.).

### B. *Iowa Assault with Intent to Commit Sexual Abuse*

As previously noted, Defendant was convicted of violating Iowa Code § 709.11(3), which reads, "[a]ny person who commits an assault, as defined in section 708.1, with the intent to commit sexual abuse … [i]s guilty of an aggravated misdemeanor if no injury results." Assault with the intent to commit sexual abuse under Iowa law in 2020 required proof of an assault—which includes things like physical acts of violence or displaying a dangerous weapon in a threatening manner—"with the intent to commit sexual abuse."[22] Sexual abuse, in turn, is "[a]ny sex act . . . when the act is performed with the other person" when "[t]he act is done by force or against the will of the other," with a person incapable of giving consent due to a "mental defect or incapacity," or with a child.[23] It is thus "a nonconsensual sex act."[24] Intending to commit sexual abuse requires proof of "the intent to commit a sex act . . . by force or against the will of the victim."[25] In 2020, the Iowa Code defined "sex act" to mean:

> [A]ny sexual contact between two or more persons by any of the following:
> 1. Penetration of the penis into the vagina or anus.
> 2. Contact between the mouth and genitalia or by contact between the genitalia of one person and the genitalia or anus of another person.
> 3. Contact between the finger or hand of one person and the genitalia or anus of another person . . . .
> 4. Ejaculation onto the person of another.

---

[22] **Iowa Code § 709.11** (2020) (assault with intent to commit sexual abuse); **Iowa Code § 708.1** (assault). The Iowa Supreme Court has interpreted this statute to mean: "(1) the defendant assaulted the alleged victim, (2) with the intent to commit a sex act, (3) by force or against the will of the victim." *State v. Beets*, 528 N.W.2d 521, 523 (Iowa 1995).

[23] **Iowa Code § 709.1**.

[24] *In re A.G.*, 662 N.W.2d 374, 2003 WL 289261, at *1 (Iowa Ct. App. Feb. 12, 2003).

[25] *Beets*, 528 N.W.2d at 523.

> 5. By use of artificial sexual organs or substitutes therefor in contact with the genitalia or anus.[26]

Thus, "a 'sex act' requires some touching of the anus or genitalia" (although it may be through clothes).[27]

Not all contact "between the specified body parts (or substitutes)" qualifies as a "sex act" for purposes of sexual abuse—the contact "must be *sexual* in nature."[28] "The sexual nature of the contact can be determined from the type of contact and the circumstances surrounding it."[29] In *State v. Pearson*, the Iowa Supreme Court stated:

> [T]he contact between an adult and a child bouncing on his or her lap would not be sexual in nature unless the circumstances surrounding it suggested it was. *Such circumstances certainly include whether the contact was made to arouse or satisfy the sexual desires of the defendant or the victim. However, the lack of such motivation would not preclude a finding of sexual abuse where the context in which the contact occurred showed the sexual nature of the contact.* Other relevant circumstances include but are not limited to the relationship between the defendant and the victim; whether anyone else was present; the length of the contact; the purposefulness of the contact; whether there was a legitimate, nonsexual purpose for the contact; where and when the contact took place; and the conduct of the defendant and victim before and after the contact.[30]

---

[26] **Iowa Code § 702.17**.

[27] *In re A.G.*, 2003 WL 289261, at *1.

[28] *State v. Pearson*, 514 N.W.2d 452, 455 (Iowa 1994). In *State v. Monk*, the court held a jury could find sufficient evidence of sexual abuse when the defendants and victim were teenagers who were "good friends" and frequently engaged in "teasing, wrestling, and similar horseplay," and during a party, defendants stuck a broom handle into the victim's anus, after which "[e]veryone laughed before [the victim] pushed the broom away and ran to the bathroom crying." The court recognized, however, that "the jury could have concluded the incident was not sexual in nature" and found error in the jury instruction defining a "sex act" based on "contact" between body parts, rather than specifically requiring "sexual contact." 514 N.W.2d 448, 450-52 (Iowa 1994).

[29] *Pearson*, 514 N.W.2d at 455.

[30] *Id.,* at 455 (emphasis added).

Thus, the Court has held that sexual abuse requires a contact that is "sexual in nature," but not necessarily for the purpose of sexual gratification. Other circumstances can demonstrate that the contact is sexual in nature.

Twenty-seven years later the Iowa Supreme Court declined to overrule *Pearson* and rejected the defendant's argument that sexual abuse required proof he sought sexual gratification.[31] In *State v. Montgomery*, the court stated "[t]he legislature codified a sexual gratification element for lascivious acts but not for sexual abuse, which can be proven by sexual contact without a motive of sexual gratification."[32] Pointing to lascivious acts with a child, indecent contact with a child, lascivious conduct with a minor, and sexual exploitation by a counselor or therapist, the court stated that "[t]he legislature knows how to require that conduct be done" for sexual gratification "because it has codified that element in other criminal statutes."[33] The court "reaffirm[ed] *Pearson* and again decline[d] to engraft an additional element the legislature omitted."[34] Relying in part on the doctrine of legislative acquiescence, the court presumed that the legislature has acquiesced in the court's interpretation because so many years passed following *Pearson*.[35] Because "[t]here are valid policy reasons why the legislature might want to criminalize sexual abuse that is not for the purpose of sexual gratification," conduct may be sexual in nature and thus a sex act when "performed to exert power or control over

---

[31] *State v. Montgomery*, 966 N.W.2d 641, 645-46 (Iowa 2021).

[32] *Id.*, at 646. Iowa Code § 709.8 (lascivious acts with a child) makes unlawful specified acts with a child "for the purpose of arousing or satisfying the sexual desires of either of them."

[33] *Id.*, at 651. Other sections of the Iowa Code also specify that a crime be "sexually motived" (defined as "one of the purposes for commission of a crime is the purpose of sexual gratification of the perpetrator of the crime"), such as Iowa sex offender registration (Iowa Code § 692A.126), civil commitment (Iowa Code § 229A.2), harassment (Iowa Code § 708.15 requires registration if against a minor and sexually motivated).

[34] *Montgomery*, 966 N.W.2d. at 646.

[35] *Id.*, at 651.

the victim without a motivation of sexual gratification."[36] As such, under Iowa law the act required for sexual abuse need not be made to arouse or satisfy the sexual desires of the defendant or the victim.

Addressing *Montgomery* and *Pearson*, the Government does not contest that Iowa courts declined to add an element of sexual gratification but states that "a sexual nature is still required to be proven to secure a conviction for any sex act or sex abuse" and that "[n]o matter the gratification, the contact must still be sexual." Doc. 28 at 5. The Government does not state clearly whether sexual gratification is required but rather asserts "even with the narrower statutory language here, assault with intent to commit sexual abuse qualifies as a sex offense." This conclusion fails to address how, under the categorical approach, sexual abuse that does not have an element of sexual gratification can constitute a sexual offense that does include an element of sexual gratification.

Both parties rely on *United States v. Carrillo-Topete*, which is a non-SORNA case that held that a prior Iowa conviction for assault with intent to commit sexual abuse "related to" sexual abuse and thus triggered a mandatory minimum sentence for possessing child pornography.[37] The Eighth Circuit compared the definition of "sexual abuse" in the federal statute and under Iowa law and noted: "we have held that the two definitions are close enough" because "'sex acts' by force or against the will of someone else necessarily involve 'physical . . . misuse or maltreatment, meaning 'the full range of conduct' covered by the Iowa statute 'fits squarely within' the generic federal

---

[36] *Id.* (favorably citing *State v. Davis*, 584 N.W.2d 913, 917 (Iowa Ct. App. 1998), in which the defendant suffocated his girlfriend with a pillow after she declined his request for sex, then beat her and put his fist inside her vagina, causing lacerations; the court rejected defendant's argument that he desired to hurt his girlfriend by putting his fist in her vagina and that the act was therefore not sexual in nature, noting they were lovers, he asked for sex an hour before the contact, and her refusal prompted his violent behavior).

[37] 116 F.4th 792 (8th Cir. 2024).

definition."[38] The Government relies heavily on that statement, but in characterizing them as "close enough" and using the term "fits squarely within" the court was looking at the conduct itself, not any motivation for that conduct. Moreover, as Defendant points out, the court noted the "potential mismatch between the reference to 'sexual gratification' in the federal definition, and the absence of a sexual-purpose requirement in Iowa," concluding that the defendant waived that argument.[39] Significantly, in that case eligibility did not require a statutory match-up of elements, but instead one offense must simply relate the other. As the Government acknowledges, this is an "admittedly broader" standard. Doc. 28 at 6.

The remaining consideration is whether assault to commit sexual abuse differs from sexual abuse by requiring a purpose of sexual gratification. While sexual abuse requires general intent, assault with intent to commit sexual abuse requires specific intent.[40] Iowa courts have stated that the standard for determining whether a defendant had the specific intent to commit sexual abuse is:

> The overt act must reach far enough towards the accomplishment, toward the desired result, to amount to the commencement of the consummation, not merely preparatory. It need not be the last proximate act to the consummation of the offense attempted to be perpetrated, but it must approach sufficiently near it to stand either as the first or some subsequent step in a direct movement towards the commission of the offense after the preparations are made.[41]

Recently, the court clarified that a defendant's "overt act toward committing sexual abuse describes only one powerful form of circumstantial evidence from which specific intent

---

[38] *Id.*, at 794 (citations omitted).

[39] *Id.*, at 794 n.2.

[40] *State v. McNitt*, 451 N.W.2d 824, 824 (Iowa 1990).

[41] *State v. Casady*, 491 N.W.2d 782, 787–88 (Iowa 1992) (quoting *State v. Radeke,* 444 N.W.2d 476, 478 (Iowa 1989)).

can be inferred" but that specific intent is "to achieve a sex act specifically described in section 702.17," without mentioning any purpose of gratification.[42] In addition, "[e]vidence sufficient to prove necessary specific intent includes sexual comment, touching in a sexual manner, attempt to remove clothing, or an act in any other way which would indicate a *plan* to engage in sexual activity."[43] The purpose then is to commit the defined sex act, not to achieve sexual gratification. For example, the Iowa Supreme Court has noted that the act of a defendant placing a hand on a girl's breast "was an assault and may have involved a sex oriented purpose" but "this act alone was not sufficient" because "the purpose of this conduct might well have been limited to fondling of the girl's breast" and not to engage in a sex act as defined in § 702.17.[44] In *State v. Beets*, the Iowa Supreme Court upheld a conviction for assault with intent to commit sexual abuse because the trial court found that the defendant "committed an assault upon the victim by grabbing and fondling her body against her will" and "intended to commit a sex act of penis to vagina contact or contact between his penis and the hand of [the victim]."[45] The court concluded there was substantial evidence to support the conviction, without ever addressing any motivation for the defendant's acts.[46] As such, Iowa courts may require some sort of plan or overt act to achieve a sex act for specific

---

[42] *State v. Hawkins*, No. 23-1468, 2025 WL 3180318, at *4–6 (Iowa Nov. 14, 2025) (citation omitted).

[43] *State v. Most,* 578 N.W.2d 250, 254 (Iowa Ct. App.1998) (emphasis added).

[44] *Radeke,* 444 N.W.2d at 478.

[45] 528 N.W.2d at 523.

[46] *Id.*, at 524 ("Beets took a young member of his church to a secluded road late in the evening. He is much larger than she. He lunged at her, grabbing and fondling her. She protested and struggled against the assault. Beets attempted to make contact between his penis and her hand or her vagina. This evidence sufficiently supports the conviction of assault with intent to commit sexual abuse.").

intent, but I have not found any Iowa authority limiting that plan or overt act to those with the purpose of sexual gratification. Indeed, there is no reason to add that element to the Iowa offense of assault with intent to commit sexual abuse when the Iowa offense of sexual abuse itself does not require it. And the parties have not identified any caselaw requiring that the defendant sought sexual gratification to commit assault with intent to commit sexual abuse under Iowa Code § 709.11.

I agree with Defendant that the Iowa offense of assault with intent to commit sexual abuse encompasses acts that may not be motivated by sexual gratification. Because the Iowa offense is broader than SORNA's definition of sex offense, Negrete-Vaca's conviction for assault with intent to commit sexual abuse does not categorically qualify as a sex offense under SORNA. Thus, as a matter of law, Negrete-Vaca was not required to register as a sex offender under SORNA, and I recommend that indictment be dismissed.

### III. CONCLUSION

I recommend **GRANTING** Negrete-Vaca's motion to dismiss (Doc. 23).

Objections to this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1), Federal Rule of Criminal Procedure 59(b), and Local Criminal Rule 59, must be filed within fourteen days of the service of a copy of this Report and Recommendation; any response to the objections must be filed within seven days after service of the objections. A party asserting such objections must arrange promptly for the transcription of all portions of the record that the district court judge will need to rule on the objections.[47] Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the

---

[47] **LCrR 59**.

objections.[48] Failure to object to the Report and Recommendation waives the right to de novo review by the district court of any portion of the Report and Recommendation, as well as the right to appeal from the findings of fact contained therein.[49]

**DATED** February 2, 2026.

Kelly K.E. Mahoney
Chief Magistrate Judge
Northern District of Iowa

---

[48] *See* **Fed. R. Crim. P. 59**.

[49] *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).